# R. C. BURNS AND TILLMAN BURNS V. THE STATE.

No. 15198.   Delivered October 26, 1932.
Appeal Reinstated November 23, 1932.
Rehearing Denied as to Tillman Burns and Granted as to R. C. Burns
March 22, 1933.
Reported in 57 S. W. (2d) 836.

*Affirmed as to defendant Tillman Burns, reversed as to defendant R. C. Burns, and remanded.*

The opinion states the case.

*S. M. Adams,* of Nacogdoches, for appellants.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is burglary; the punishment, confinement in the penitentiary for five years.

The trial term of court adjourned on the 12th day of October, 1931. Appellants did not enter into recognizance during the term of court in order to secure their enlargement pending appeal, but on the 9th day of October, 1931, executed appeal bonds to effect their enlargement. These bonds were filed on October 11, 1931, which was one day prior to the adjournment of court. This court acquires no jurisdiction of an appeal where an appeal bond is filed during the trial term of the court. Zepeda v. State, 7 S. W. (2d) 527, and authorities cited.

The appeal is dismissed.

*Dismissed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON APPELLANT'S MOTION TO REINSTATE THE APPEAL.

CHRISTIAN, JUDGE.—The record having been perfected, the appeal is reinstated and the case considered on its merits.

The place of business of Leo Bergman was burglarized and a quantity of merchandise taken therefrom. Three days after the burglary appellants confessed to the arresting officer and told him where he could find the fruits of the crime. Pursuant to the statements of appellants the officer went to the home of appellant Tillman Burns and found a quantity of the stolen merchandise. The appellants each made a written voluntary confession. These confessions gave substantially the same ver-

sion of the transaction, each appellant stating in his confession that the burglary had been committed by the two appellants and Sam Brown pursuant to an agreement entered into between the parties. Omitting the formal parts, we quote, in part, the statement of appellant R. C. Burns, as follows: "Last Thursday afternoon, September 4th, 1930, Sam Brown, T. B. Burns, my brother, and I agreed to go in the store of Leo Bergman that night. We were all drinking over on the creek when we made this agreement. We ate supper at the home of my brother, where he had killed a black hen for supper. After we had gotten supper and sometime after dark we all three left there to go to Corrigan and go in the store. We got to Corrigan about eleven o'clock and waited behind Cobb's store for a while. A train came in and Sam went over there to cut the screen. It was agreed that I should stay out there and watch and T. B. Burns and Sam Brown were to go in the store. This they did and I stayed out there and watched for them. I was going to throw a rock on the store if anyone was coming. They stayed in there about fifteen minutes and came out each came out carrying a sack. We left there right then and went back down the track. On our way back home two of us eat sardines and threw the cans away down the way we traveled home, just where I don't know. After we had gotten close to home we divided the stuff. I got some bacon. One pair of gloves, several knives and some spelling tablets."

We quote from the confession of appellant Tillman Burns as follows: "About Thursday night, September 4th, 1930, Sam Brown, R. C. Burns and I went over to Corrigan, Texas, to go in the store of Leo Bergman. We had all three agreed to go in there that afternoon before, we were over on the creek about a mile from my house and there while drinking some whisky, it was mentioned by Sam Brown first that Leo should have several hundred dollars in that safe or vault, and that it had a sign on same that it wasn't locked, and we then agreed to go in there that night. We all three above mentioned left my house to go over there sometime after dark. We walked over there and got there sometime about midnight I would guess. When a train came in Sam cut the screen twice or three times. Then one of us two raised the window and Sam went in first then he pulled me in. We had thrown two sacks in there. After we got in there we began to gather stuff and put in the sacks. R. C. Burns was outside watching for us. We had all agreed that he was to watch and let us know if anyone was coming. And Sam Brown and I had agreed to go in and get the stuff. As soon as we got in there we unfastened the

back door so that we could get out easy if necessary. Each of us got stuff in our sack, one sack was a grass sack and the other a cotton sack. We had brought both of them with us. We got two full sides of meat, and two other pieces that would about make a third side. We got a package of rice. We got about five boxes of sixteen gauge shotgun shells. We got a piece of a box of twelve gauge shells. We got some seven or eight pocket knives. We got one can of sweet potatoes. We got some raisins. We got one can of soup. We got some sardines. One big 'Bale' sack of tobacco. We got 5 bottles of three-sixes tonic. We got some snuff. We got some spelling tablets 'called cat bird tablets.' We got some gloves three and one-half pairs of gloves. We went in there about midnight. We got in by cutting the screen and raising a window. We traveled the track both coming and going, that is the track from Benford. We stopped at a branch and got water both coming and going. We hid under the water tank at Cobb's store when we first got there. While in the store we ran over a chair and knocked it over and just left it that way. When we come out of the store R. C. Burns, my brother, was still there waiting for us. We all left there together and went back to my home. Before we separated that night we divided the stuff. R. C. took his and left and Sam and I went to my house and stayed all night."

Appellants were separately indicted, but upon their motion were jointly tried. Appellant R. C. Burns pleaded not guilty. Appellant Tillman Burns refused to plead and the court entered a plea of not guilty for him. The last-named appellant filed an application for a suspended sentence. Appellant R. C. Burns did not testify. Appellant Tillman Burns took the stand and admitted his guilt, but declared that appellant R. C. Burns had nothing to do with the commission of the offense. He admitted that appellant R. C. Burns was outside the store, but testified that he was asleep. He said R. C. Burns was too drunk to know what occurred. Further, he testified that R. C. Burns had not entered into an agreement to burglarize the store and did not know that he and Sam Brown committed the offense. He denied that appellant R. C. Burns received any of the stolen property.

No effort was made by either of the appellants to attack the voluntary character of their confessions.

Bill of exception No. 2 relates to the refusal of the court to grant appellant R. C. Burns' subsequent application for a continuance. It is alleged in the application that the witnesses named therein would testify, if present, that they saw R. C.

Burns on the evening before the burglary and the morning thereafter, and that he was in such a state of intoxication that, in their opinion, he did not know the difference between right and wrong. One of the witnesess would testify, according to the averments in the application, that R. C. Burns had been drunk several days prior to the burglary. We deem it unnecessary to mention the diligence shown in the application. Appellant R. C. Burns failed to attach to his motion for a new trial the affidavits of the absent witnesses showing that they would give the testimony alleged in the application. In the light of the testimony heard upon the trial, the opinion is expressed that, in considering the motion for a new trial, the trial court did not abuse his discretion in determining that the testimony of the absent witnesses was probably not true, and that such testimony was not of the character as that a different result might be produced thereby on another trial. In the absence of the affidavits of the absent witnesses to the effect that they would have sworn to the facts stated in the application for a continuance, the judicial discretion rested with the trial judge in determining, in passing on the motion for a new trial, whether or not the absent testimony was probably true, in view of all the evidence heard during the trial. Blanks v. State, 12 S. W. (2d) 564; Tubb v. State, 5 S. W. (2d) 150.

Bill of exception No. 3 presents the following occurrence: While the sheriff was testifying on direct examination for the state, he stated that he had a conversation with the appellants and Sam Brown at the same time and in the presence of each other three days after the burglary, during which they told him where he could find the merchandise taken from the burglarized store. He said that the three parties admitted to him that they burglarized the store. He testified that pursuant to the declarations made to him by the parties, he found the stolen goods in the home of appellant Tillman Burns. He said: "Tillman said he had it (meaning the snuff) in his house and I found it there next day after they made the statement. Reece (appellant R. C. Burns) and Tillman Burns told me about some 666 Chill Tonic, the best I remember. They said that two bottles and I found one at Tillman's." Further, he said: "During this conversation they made a statement to me with reference to the fruits of the burglary of Leo Bergman's store that I afterwards found to be true. They told about going out and going in the store and on the way back what they had done." It is certified in the bill of exception that the appellants were under arrest at the time the statements were made and that said statements were admitted by the court against both appel-

lants. Further, it is certified in the bill that none of the property was found where appellant R. C. Burns said it would be. Appellant R. C. Burns objected to the use of the testimony against him on the ground that he was under arrest and that it was not admissible for any purpose. In his voluntary confession appellant R. C. Burns made substantially the same statement the sheriff made. He made no attack on the voluntary character of his confession. No objection was made to the introduction in evidence against him of his voluntary confession. If the evidence was improperly admitted, and this is not conceded, its reception does not constitute reversible error. It is a general rule that the admission of improper evidence does not constitute reversible error if the same facts were proved by other and proper testimony which was not objected to, as where the accused voluntarily gave testimony substantially the same as that erroneously received over objection. Texas Jurisprudence, vol. 4, page 587; Hathcock v. State, 16 S. W. (2d) 821; Lawler v. State, 9 S. W. (2d) 259.

Bill of exception No. 19 reveals that when the confession of appellant Tillman Burns was offered in evidence, appellant R. C. Burns objected to it being introduced in evidence against him, in that it was a statement and confession made by his co-defendant after the conspiracy had terminated and was hearsay. Bill No. 20 shows that appellant Tillman Burns made the same objection when the confession of appellant R. C. Burns was introduced. It is not necessary to decide whether the fact that the confessions were taken at the same time and in the presence of each other and that each heard the confession made by the other at the time they were taken would render admissible both confessions against either of the appellants. The appellants were being jointly tried and it was proper for the court to receive in evidence the confession of appellant R. C. Burns as against him and the confession of the appellant Tillman Burns as going to establish his guilt. If appellant R. C. Burns desired to have the matter reviewed by this court, he should have excepted to the charge of the court for its failure to limit the use of the confessions, or else he should have presented a requested instruction on the subject. As far as the record reflects the matter, this he failed to do.

As shown in bill of exception No. 22, appellant Tillman Burns was asked on his direct examination to state how many members there were in his family. Upon objection by the district attorney he was not permitted to answer the question. The bill recites he would have answered that he had a wife and five children, the ages of the children ranging from two months

to eight years. It is recited in the bill that appellant Tillman Burns had made an application for a suspended sentence. It is shown that appellant Tillman Burns was thirty-five years of age. Many witnesses testified that his general reputation for being peaceable and law-abiding was bad. The testimony of these witnesses was not controverted. If it had been proper for appellant to testify as to the fact that he had a wife and several children, we are unable to reach the conclusion that the refusal of the court to receive the testimony should work a reversal. The fact that it was shown beyond dispute that appellant Tillman Burns's general reputation for being peaceable and law-abiding was bad would more than likely have impressed the jury with the view that his children should be removed from his influence.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Most of the questions discussed in our original opinion and those presented in the motion for rehearing found their way into the record because of the consolidation of cases predicated on separate indictments against appellants, and because of a joint trial. We said in Sims v. State, 119 Texas Crim. Rep., 83, 45 S. W. (2d) 579: "Experience and observation demonstrates that the joint trial of two individuals upon separate indictments leads to confusion and difficulty in preparing a record for appeal." The truth of the above statement is further demonstrated by what we find in the present record. See, also, Ivey v. State, 51 S. W. (2d) 716.

It will be necessary frequently to refer to R. C. Burns and Tillman Burns, and for brevity and convenience they will be referred to as R. C. and Tillman. At the time the original opinion was prepared no objections to the court's charge appeared in the record. Such objections which were timely filed are now before us and bill of exception number three will be again reviewed in the light of these objections. It appears from the recitals in said bill that while Sam Brown, Tillman and R. C. were under arrest the sheriff had a talk with them and they made certain oral statements to him. If such statements became admissible in evidence, it is by reason of that part of article 727, C. C. P., which admits confessions if in

"connection with said confession he (referring to accused) makes statements of facts or circumstances that are found to be true, which conduce to establish his guilt, such as the finding of secreted * * * property," etc. The bill shows that the sheriff in his testimony continually used the word "they," such as *they* made a statement to me with reference to the fruits of the burglary," and *"they* told about going out and going in the store, and on the way back what *they* had done." The sheriff testified that as a result of this conversation with the three parties he found at Tillman's house and near it certain property enumerated by him and which seems to have been identified as some of the property taken out of the burglarized store. It is recited as a fact in the bill that these statements were admitted against both R. C. and Tillman, but that none of the property was found where R. C. said it would be. The testimony was specifically objected to as against R. C. We understand from the bill that none of the fruits of the crime were discovered as a result of what R. C. told the officers. An examination of the statement of facts upon the same subject leads to the conclusion that the statement regarding the location of the stolen property were really made by Sam Brown and Tillman, although the testimony is somewhat confusing. There was a specific objection (paragraph seventeen) to the charge because the court had omitted to instruct that the statements of Brown and Tillman could not be used against R. C. We had occasion to consider practically this same question in Garcia v. State, 88 Texas Crim. Rep., 605, 228 S. W., 938, and Nelson v. State, 113 Texas Crim. Rep., 632, 21 S. W. (2d) 1045. In Garcia's case he and another party, while both were under arrest, *each* admitted to the officer that they had committed a burglary and *each* told the officer in detail where the property had been secreted. The officer being doubtful whether he could find the property from the description of its location, took one of the prisoners with him to aid in its recovery, leaving the other in jail. The stolen property was found at the exact point described by the prisoner left in jail, as well as by the one who accompanied the officer. Under such circumstances it was held that the confession of the prisoner who did not accompany the officer was admissible in evidence. The opinion makes it clear that the holding was based upon the fact that the stolen articles were found at the very place described by the prisoner who was left in jail. In the present case the bill contains a recital which amounts to a certificate of fact that none of the stolen property was recovered by reason of

any statement made to the officer by R. C. In our opinion the statement testified to by the sheriff should not have been admitted against R. C. Of course, it was admissible against Tillman, who was also on trial, but the court should have responded to the objection and made it plain that it could not be considered as against R. C. The question under consideration was mentioned in Blake v. State, 81 Texas Crim. Rep., 87, 193 S. W., 1064. It was said in the opinion that the bill of exception presenting the question was indefinite as to the real conditions and environment attending the making of the statements of accused then on trial, as well as his codefendant. The court says:

"It seems from the bill that the court admitted the testimony on the theory that the fruits of the crime, or instruments by which it was committed, were found by reason of the confession, though this is not clear. Upon another trial this testimony will not be admitted unless a proper predicate is laid. * * * If proper predicate is laid, we are of the opinion the statements of the codefendant could also be introduced, as these conversations occurring between the sheriff and the two parties, each having made practically the same statement in the presence of each other at the same time."

It is not clear from the opinion what was in the mind of the learned judge writing it as to what would constitute a proper predicate.

Still another complication by reason of this joint trial arose when Tillman took the witness stand to testify. R. C. did not testify, neither did he call Tillman as a witness, and could not have done so under the statute (article 711, C. C. P.) had he so desired. Neither could he have prevented Tillman from becoming a witness because the latter was himself upon trial and had a right to testify in his own behalf. In his testimony Tillman completely exonerated R. C. of any complicity in the burglary. Tillman's testimony was to the effect that he and Sam Brown committed the burglary; that R. C. went with them to a point near the store, but was not a party to an agreement to commit the burglary, and was so under the influence of intoxicating liquor that he was in a stupor and knew nothing about what was going on and was asleep at the time Tillman and Brown came out of the store. With the record in this condition the court charged the jury that Tillman was an accomplice witness against R. C. If the charge was called for, it was erroneous in that it instructed the jury that they could not convict R. C. upon Tillman's testimony unless they first

believed that Tillman's testimony was true and *"tended to connect R. C."* with the offense charged and then that they could not convict R. C. unless there was other testi-mony in the case corroborative of Tillman's testimony *which tended to connect R. C.* with the offense. It is doubtful if this defect in the charge was pointed out by sufficiently specific objection to call the court's attention to it; that it is erroneous has been so many times decided we discuss the matter no fur-ther, simply citing some of the authorities. Baggett v. State, 65 Texas Crim. Rep., 425, 144 S. W., 1136, in which many authorities are cited. One of the later cases is Sealy v. State, 47 S. W. (2d) 295, in which many other authorities are noted. We call attention to the form of the charge in order that the same mistake may not occur upon another trial, if one should be had of R. C.

In the ninth paragraph of the objections to the charge it was pointed out to the court that the defendant was complain-ing about the instructions with reference to Tillman being an accomplice witness because he had testified positively that R. C. had nothing whatever to do with the burglary, and that, as framed, the charge on accomplice testimony was not applicable. We are doubtful as to the propriety of giving a charge on ac-complice testimony as to Tillman, at all under the circum-stances. If there were any incriminating statements in his tes-timony and the court thought it proper to charge on accom-plice testimony by reason thereof, then in framing the charge he should have avoided leaving the impression on the jury that as to the exculpatory statements it was necessary that they should also be corroborated. See Josef v. State, 34 Texas Crim. Rep., 446; Williams v. State (Texas Crim. App.), 37 S. W., 325. In Puryear v. State, 56 Texas Crim. Rep., 231, 118 S. W., 1042, an instruction given by the court under somewhat similar conditions is set out. While not approved in all par-ticulars, it protected accused under the circumstances men-tioned. It is the opinion of the writer that it would have been better for the court not to have undertaken to charge on the matter at all unless requested to do so by appellant R. C.

There appears another instruction on accomplice testimony under most peculiar circumstances. It relates to statements made by Sam Brown which went into the record through the testimony of the sheriff. Sam Brown was not upon trial and did not testify in the case. Notwithstanding this, the jury was told that Brown was an accomplice and was instructed regard-ing his statements to the sheriff. We find no exception to the

giving of the charge and therefore pertermit any discussion of the propriety of the charge having been given at all. The objections are directed to the form of the charge. We refer to Abbott v. State, 94 Texas Crim. Rep., 31, 250 S. W., 188, and Oates v. State, 67 Texas Crim. Rep., 497, 149 S. W., 1194, and Henderson v. State, 97 Texas Crim. Rep., 247, 260 S. W., 868, for a discussion generally of charges on accomplice testimony.

Our discussion of the questions presented in the motion for rehearing have been with reference to appellant R. C. Burns. We have not discussed the claimed errors as they relate to Tillman Burns for the reason that he went upon the witness stand and testified upon the trial and admitted his guilt. Such errors, if any, as may have been committed against him, would, under the circumstances, be harmless.

The motion for rehearing as to Tillman Burns will be overruled. As to R. C. Burns the judgment of affirmance is set aside, the motion for rehearing is granted, and the judgment is reversed as to him, and the cause remanded for the errors pointed out.

*Affirmed as to defendant Tillman Burns.*
*Reversed as to defendant R. C. Burns, and*
*remanded.*