Jimmy Lee **WESTBROOK**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 49923.

Court of Criminal Appeals of Texas.

May 21, 1975.

Willis T. Taylor, Daniel H. Benson, Lubbock, of counsel, for appellant.

Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for murder with malice. Punishment was assessed by the jury at ten years.

Appellant contends that the trial court erred in refusing to allow Officer Parramore to testify as to statements made to him by appellant after his arrest.

The record reflects that on August 6, 1973, the appellant shot and killed Freddy

Lee Stephens. Immediately after the shooting, appellant called Parole Officer Childs and advised him of the homicide and the circumstances surrounding the killing. The parole officer and the appellant went to the police station, where appellant voluntarily surrendered himself. Childs gave the officers the murder weapon. Appellant was timely and properly warned of his rights, and he made an oral confession to Officer Parramore which Parramore testified resulted in the recovery of empty hulls fired from the murder weapon.[1]

The following testimony was elicited from Parramore on direct examination by the State relative to statements made by appellant at the police station.

"Q. Okay. And what did you ascertain about that pistol?

"A. Well, after I took him upstairs, I asked him, I asked Mr. Westbrook [appellant] if that was the pistol used in the shooting.

"Q. And what was his response?

"A. He replied it was.

\*    \*    \*    \*    \*    \*

"Q. And this is the gun that the deceased [sic] stated he did shoot him with, is that correct?

"A. Well, this is the gun that the defendant said he shot the deceased with.

\*    \*    \*    \*    \*    \*

"Q. Detective Parramore, after you interviewed the defendant Jimmy Lee Westbrook, what did you do?

"A. . . . I asked him where the hulls were that went to the gun.

\*    \*    \*    \*    \*    \*

"Q. Okay. And did you find out where the hulls were?

"A. Yes, sir, he told me they were in the Flamingo Apartments in Apartment No. 6.

1. See Art. 38.22, Vernon's Ann.C.C.P.

"Q. Okay. Did you go to the Flamingo Apartments?

"A. Yes, sir, I did.

"Q. And where did you go in the apartments?

"A. At Apartment No. 6.

"Q. And did you find any bullets there?

"A. Found some empty hulls."

Appellant's version of the circumstances relating to the homicide was that on the morning of August 6, 1973, he purchased a television set from the deceased. Later that day, he discovered that the TV set was stolen. He attempted to return the TV set and obtain a refund of his money. When the appellant encountered the deceased, an argument broke out. Appellant testified that during the course of that argument the deceased advanced toward him and threatened to kill him.

Appellant's nephew, Tony Dunn, testified that ". . . me and my uncle [appellant] started around the car to call the police and Freddie [deceased] came around the front end of the car with a pocket knife in his hand, came toward him [appellant], said he was going to kill him." Appellant further testified that at the time in question he was aware of occasions when the deceased had shot people, knew of his reputation for carrying a weapon, and did not shoot deceased until he had first fired a shot into the ground in an effort to repel deceased's advances toward him. The record reflects a pocketknife was among the personal effects found in the deceased's clothing at the hospital. The court instructed the jury relative to the law of self-defense.

On cross-examination of Parramore, appellant sought to elicit the remainder of appellant's statement to him as to how the shooting occurred. The trial court sustained the State's objection to this testimony on the ground that it was hearsay.

Appellant perfected his bill of exception out of the presence of the jury to show that Officer Parramore would have testified as follows:

"Q. All right. What did he relate to you, Officer Parramore?

"A. He related that he bought a TV for $45.00 from the deceased and he found out that the TV was hot.

"Q. And by hot, what do yo mean?

"A. Well, it was stolen.

"Q. All right.

"A. And he tried to get his money back on the TV, and they had some words, and the shooting erupted.

"THE COURT: I didn't understand you, Officer, that last part I didn't understand.

"A. They had an argument over the stolen TV, and the defendant tried to get his money back from the deceased and they had an argument over getting the money back and the shooting erupted from that.

"Q. All right. Now, did he say why he wanted to get his money back?

"A. Because he didn't want to get in trouble with the parole officer over having a hot—stolen TV.

"Q. All right, now in your report you also have this, and did the defendant tell you this: 'The subject stated that they started arguing about the TV and he stated that the above victim', and by that I presume he meant the deceased?

"A. Right.

"Q. '—did reach in his pocket and brought out an open pocket knife and he stated that he started toward him', is that correct?

"A. Yes, sir.

"Q. And is that when the defendant said that he shot the deceased when he started toward him with an open pocket knife?

"A. Yes, sir, I believe that is correct."

Article 38.24, V.A.C.C.P., provides:

"When part of an act, declaration of conversation or writing is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation or writing is given in evidence, any other act, declaration or writing which is necessary to make it fully understood or to explain the same may also be given in evidence."

In Williams v. State, 89 Tex.Cr.R. 334, 231 S.W. 110, the Court, in construing then Art. 811, C.C.P. (identical to Art. 38.24, V.A.C.C.P.), said:

"In bill No. 6 complaint is made of the refusal of the court to permit the appellant, upon cross-examination of the officer who arrested him and by whom the state proved certain inculpatory statements were made, to prove that in connection therewith the appellant made other statements of fact which he desired to introduce as exculpatory. As we understand the bill, this testimony was admissible under article 811, Code of Criminal Procedure, in which it is declared that when part of an act, declaration, or conversation is given in evidence by one party, the whole on the subject may be introduced by the other, and where an act or declaration, which is necessary to make fully understood or to explain the same, may also be given by the opposing party. We do not think that the construction of the statute would be correct which would permit the state to prove that the appellant made declarations which led to the finding of the pistol with which the offense was committed, and exclude other declarations made in the same connection which would tend to be exculpatory."

In the instant case, the prosecutor elicited testimony on direct examination from Officer Parramore that appellant made an oral confession to him in which he admitted a certain gun was the one he used to shoot the deceased. He further testified that as a result of appellant's confession he was able to recover incriminating evidence. The appellant should have been permitted to inquire of Parramore as to the remainder of the oral confession which contained exculpatory statements concerning the shooting. Art. 38.24, V.A.C.C.P.; Williams v. State, supra; King v. State, 162 Tex.Cr.R. 515, 287 S.W.2d 642; Henry v. State, 106 Tex.Cr.R. 198, 291 S.W. 542; Pharr v. State, 9 Tex.Cr.App. 129.

The circumstances as viewed from appellant's standpoint at the time he shot the deceased were critical to his claim of self-defense. We cannot conclude that the fact he was able to present his version of the homicide through his testimony and that of his nephew at trial rendered harmless the court's error in refusing to admit the exculpatory portion of appellant's oral confession relating to self-defense made shortly after the shooting to Officer Parramore.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.